David NUNEZ, Alex Gomez, and
Clyde Anthony Vlaskamp,
Plaintiffs–Appellants,

v.

CITY OF LOS ANGELES, the Los Angeles Police Department, Chief Willie
Williams, Captain James Tatreau, Captain Lee Carter, Sergeant Gary Grubbs,
Defendants–Appellees.

No. 97–55139.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1998.

Decided June 5, 1998.

Russell J. Cole, Law Offices of Paul R. DePasquale, Los Angeles, California, for appellants.

Leslie E. Brown, Assistant City Attorney, Los Angeles, California, for appellees.

Before: FARRIS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a Los Angeles police officer has a constitutionally protected property or liberty interest in promotion to higher rank.

I

The Los Angeles Police Department ("LAPD") administers an examination for police officers who wish to be promoted to the position of lieutenant. The test contains written and oral components. If a candidate scores high enough—65% on the written portion and 70% overall—his or her name is added to a list of qualified prospects. The list is organized by bands, or groups, of scores; the Chief of Police must exhaust the candidates within a given band before selecting anyone from a lower band. As positions become available, candidates are chosen until such time as the list expires.

Not just any officer can take the examination. According to official policy, a candidate must have, among other credentials, at least one year of supervisory experience. It is undisputed that officers David Nunez, Alex Gomez, and Clyde Anthony Vlaskamp (collectively, the "police officers") all fulfilled this requirement and each took the examination at least once. None, however, got promoted. The problem, they assert, is that several applicants lacking supervisory experience sat for the exam, received top scores, and eventually became lieutenants. Allegedly, the LAPD, the City of Los Angeles, and several members of the police force (collectively, the "LAPD") waived the experience requirement for these favored candidates in violation of the official policy. This contention forms the basis of the police officers' substantive due process claims, which were brought in April 1994, in an action under 42 U.S.C. § 1983.[1] In addition, Nunez argues that, after he objected to the LAPD's alleged practice of promoting unqualified applicants, he suffered retaliation. This allegation forms the basis of his First Amendment claim, also brought pursuant to 42 U.S.C. § 1983.

Upon motion, the district court granted summary judgment to the LAPD. Nunez, Gomez, and Vlaskamp timely appealed.

## II

■ As to Gomez, the district court held that the statute of limitations barred all but one of his substantive due process claims.[2] Gomez applied for the promotion five times—in 1985, 1987, 1989, 1991, and 1994—and alleges that, every time, the LAPD allowed inexperienced candidates to take the examination. According to the district court, if this favoritism were unconstitutional, Gomez's claims would have accrued one at a time when the exams were administered, see Grimes v. City and County of San Francisco, 951 F.2d 236, 238–39 (9th Cir.1991) (holding that violation accrues when discriminatory act occurred); upon accrual, the statute of limitations would have started to run. Because the limitations period is only one year, see Usher v. City of Los Angeles, 828 F.2d 556, 558 (9th Cir.1987), it would have expired well before this action was filed in April 1994—for all claims except the one arising out of the 1994 examination.

Gomez's only response is that the "discovery rule" should have tolled the statute of limitations until he had knowledge of his injury and its cause. The district court did not disagree. Neither do we. However, as Gomez's own deposition unmistakably shows, he had the requisite knowledge as soon as an allegedly favored candidate took the exam and got promoted; consequently, the discovery rule does not help him:

Q: When did you first become aware or when did you first believe that people who did not have the necessary supervisorial experience were sitting for the lieutenant's exam?

A: I was assigned to internal affairs, and there were two women there who were detectives, and they were D–II's, Detective II's, working with sergeant II's. They both took the lieutenant's exam and weren't qualified because they didn't meet the supervisory requirement, passed, and made lieutenant.

Q: When was this?

A: 1985.

. . . . .

Q: You said that every examination after 1985, that there would be people who sat for the lieutenant's exam who were not qualified?

A: Right, and promoted to lieutenant.

Q: Who were those persons, what year did they sit, and when did you find out about that?

A: *Every exam, I knew who those people were.*

. . . . .

---

1. The police officers originally claimed violations of their procedural due process and equal protection rights. However, they dropped these contentions on appeal.

2. Intriguingly, Vlaskamp also contends that the district court erroneously held his claims to be time-barred. The district court did not so hold. Rather, it tolled the statute of limitations under the "discovery rule" and then proceeded to reject Vlaskamp's claims on the merits.

Q: So just making sure I understand it, as these exams were being administered and at the time you were participating in them, you were aware of individuals who were sitting for the exam who were not qualified?

A: Yes, sir.

Deposition of Alex Gomez 16–20 (Mar. 20, 1996) (emphasis added).

■ Gomez's own words betray him. He had actual knowledge of his alleged injury: inexperienced candidates were taking the examination and receiving promotions over him. He also had at least presumptive knowledge of the alleged cause of his injury, the LAPD's favoritism.[3] Despite this overwhelming evidence, however, Gomez argues that the district court overlooked a genuine issue of fact, which arose when he made contradictory statements in a subsequent declaration. Alas, not good enough: a party cannot create a triable issue by contradicting his own sworn testimony. *See Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975); *see also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Finding the subsequent declaration to be a sham, the district court correctly held that the only test Gomez can challenge is the one administered in 1994.

## III

■ The central question on appeal is whether the LAPD violated the police officers' substantive due process rights by promoting inexperienced candidates in disregard of official policy. The concept of "substantive due process," semantically awkward as it may be, forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (quoting, respectively, *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)) (citations and internal quotation marks omitted).

### A

■ To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property.[4] *See Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 4 (7th Cir.1974) (opinion by Stevens, J.) ("[T]he absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument."). According to Nunez, Gomez, and Vlaskamp, the cronyism in the LAPD deprived them of both property and liberty. The property interest, they contend, is the promotion to lieutenant. The two asserted liberty interests are the right to engage in one's chosen profession and the right "to be free from wholly unreasonable and arbitrary" government conduct.

### 1

■ Do these police-officer plaintiffs have a property interest in promotion? Although one's actual job as a tenured civil servant is property, *see, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the prospect of a promotion is not in the same category. Several of our sister circuits have already

---

3. Under California law, " 'presumptive' as well as 'actual' knowledge will commence the running of the statute [of limitations]." *Sanchez v. South Hoover Hosp.*, 18 Cal.3d 93, 101, 132 Cal. Rptr. 657, 553 P.2d 1129 (1976). If a plaintiff has "notice or information of circumstances to put a reasonable person on inquiry," the statute runs. *Id.* (quoting 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 339, at 1181) (internal quotation marks omitted).

4. Obviously, merely showing such deprivation is not enough to prevail. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). These fields likely represent the outer bounds of substantive due process protection. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").

reached the issue and rejected attempts to classify an expectancy in a promotion as a property interest.[5] *See, e.g., Wu v. Thomas,* 847 F.2d 1480, 1485 (11th Cir.1988); *Griffith v. Federal Labor Relations Auth.,* 842 F.2d 487, 500–01 (D.C.Cir.1988); *Bigby v. City of Chicago,* 766 F.2d 1053, 1056–57 (7th Cir. 1985); *Robb v. City of Philadelphia,* 733 F.2d 286, 293 (3d Cir.1984); *Burns v. Sullivan,* 619 F.2d 99, 104 (1st Cir.1980); *Clark v. Whiting,* 607 F.2d 634, 641 (4th Cir.1979); *Schwartz v. Thompson,* 497 F.2d 430, 433 (2d Cir.1974). On one occasion, so has this court, albeit in a cursory manner. *See Blevins v. Plummer,* 613 F.2d 767, 768 (9th Cir.1980) (per curiam).

█ We see no reason to buck the trend. As the Supreme Court has explained, property interests are not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In California, the terms and conditions of public employment are generally "fixed by the statute, rules or regulations creating it, not by contract (even if one is involved)." *Williams v. Los Angeles City Department of Water and Power,* 130 Cal. App.3d 677, 680, 181 Cal.Rptr. 868 (1982); *see also Miller v. California,* 18 Cal.3d 808, 813–14, 135 Cal.Rptr. 386, 557 P.2d 970 (1977). No such law creates a property interest in a promotion. To be sure, the Los Angeles City Charter grants tenured police officers "a substantial property right" in his "office or position"; however, it merely precludes arbitrary "suspen[sions], demot[ions] in rank, ... remov[als]," or other separation from the LAPD. Charter of the City of Los Angeles, Art. XIX, § 202, at 323 (1990). It does not address promotions. *Cf. Shoemaker v. County of Los Angeles,* 37 Cal.App.4th 618, 632, 43 Cal.Rptr.2d 774 (1995) ("The civil service rules [of Los Angeles County] may

have created a legitimate expectation that, absent good cause, the County would not terminate Shoemaker's employment altogether or impose other disciplinary measures (e.g., demotion) that would adversely affect his compensation," but "the County retained the discretion to reassign or transfer employees without cause.").

█ The police officers also direct us to an unpublished consent decree, known as the "Hunter–LALEA" Consent Decree, which was entered into in the Central District of California by the City of Los Angeles and litigants from other lawsuits.[6] This agreement established an "affirmative action plan" consisting, *inter alia,* of promotion goals for minority police officers. Nunez and Gomez, who are Hispanic, suggest that this consent decree grants them a property interest in a promotion. We disagree. If a consent decree could ever create property rights, this is not the one. The agreement, at most, bestows rights on a group, not on any individual police officer. Individual applicants for a promotion must still establish qualification. Moreover, the city may use any qualification device not expressly barred, so the LAPD's written and oral tests are permissible.

█ To have a property interest, "a person clearly must have more than an abstract need or desire." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. A mere "unilateral expectation" of a benefit or privilege is insufficient; the plaintiff must "have a legitimate claim of entitlement to it." *Id.* When the police officers sat for the lieutenants examination, notwithstanding the Consent Decree, any possibility of promotion was contingent upon their success on the exam, as well as upon the number of lieutenant positions available. Such contingencies belie the claim that the police officers had even so much as a reasonable expectation of being promoted.

**5.** The Sixth Circuit once reversed a district court which found no property interest in a promotion; however, it did so only because the district court dismissed the employee's claim on the pleadings without regard to the employee's argument that he had an implied contract entitling him to a promotion. *See Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235–36 (6th Cir. 1991). Moreover, the Sixth Circuit expressed

doubt that the employee could satisfy his "heav[y] burden" on remand. *Id.* at 1236.

**6.** Hunter was the named plaintiff in one suit. "LALEA" stands for the Latin American Law Enforcement Association, the plaintiff in another suit. "LALEA" is sometimes referred to as "La Ley."

Even if the police officers anticipated a promotion, any expectations were just that, and nothing more. They did not rise to the level of entitlements; they were "not so firm and definite ... as to be 'property' in a constitutional sense." *Bigby,* 766 F.2d at 1056. Until someone actually receives a promotion, or at least a binding assurance of a forthcoming promotion,[7] he cannot claim a property interest in the promotion. Group preferences, which merely establish group goals, do not suffice. Thus, the police officers have failed to establish a property interest in a promotion.[8]

### 2

The police officers also contend that they were deprived of two liberty interests: a right to engage in one's chosen profession and a right to be free from arbitrary and capricious government action. We address them in turn.

### a

First, to be sure, there is a centuries-old concept of liberty of occupation. *See Bigby,* 766 F.2d at 1057 (citations omitted). However, there is no similar notion of liberty of position or rank within an occupation. *See id.* Moreover, the Supreme Court held in *Roth* that a person has not suffered a deprivation of liberty "when he simply is not rehired in one job but remains as free as before to seek another" within his chosen industry, *Roth,* 408 U.S. at 575, 92 S.Ct. 2701; it follows, a fortiori, that there cannot be a deprivation of liberty when even the person's current job is still available to him.

As long as employment options within the profession remain, no due process interests have been implicated. Unsurprisingly, every circuit that has addressed the issue has rejected the claim that the denial of a promotion constitutes a deprivation of liberty. *See, e.g., Wu,* 847 F.2d at 1485; *Bigby,* 766 F.2d at 1057; *Robb,* 733 F.2d at 293–94; *Beitzell v. Jeffrey,* 643 F.2d 870, 877–78 (1st Cir.1981); *Clark,* 607 F.2d at 641–42; *Blevins,* 613 F.2d at 768; *Schwartz,* 497 F.2d at 431–32. We agree with this consensus. Whereas "preventing someone from advancing in his occupation can be a cruel deprivation, it would stretch the idea of liberty of occupation awfully far ... to treat a bar to promotion as a deprivation of that liberty." *Bigby,* 766 F.2d at 1057.

### b

The second liberty interest asserted by the police officers is the right "to be free from wholly unreasonable and arbitrary" government conduct bearing no relation to the public health, welfare, safety, and morals. Unfortunately for the police officers, the Supreme Court has already explained that a court has "no license to invalidate legislation which it thinks merely arbitrary or unreasonable." *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 226, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (quoting *Moore v. East Cleveland,* 431 U.S. 494, 543–44, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (White, J., dissenting)); *see also Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). There is no general liberty interest in being free from capricious government action.

7. When permitted by state law, this commitment need not be formally expressed in a statute or a written contract; it can be implied from words or conduct. *See Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694 (1972). Nevertheless, there must be rules or mutually clear understandings securing the commitment. *See id.* at 601, 92 S.Ct. 2694.

8. Nor do the plaintiffs have a property interest in the procedures for promoting candidates to lieutenant. Procedural requirements can give rise to property interests only when they impose "significant limitation[s] on the discretion of the decision maker." *Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir.1984). The procedures in the Los Angeles City Charter do not meet this standard.

They merely state that promotions are to be based on "ascertained merit and seniority." Charter of the City of Los Angeles, Art. IX, § 107, at 124. Establishing "only an outline of relevant considerations," *Goodisman,* 724 F.2d at 821, the charter does very little to eliminate the discretion of those who evaluate candidates on the oral portion of the lieutenants examination. Moreover, although the Manual of the Los Angeles Police Department imposes an experience requirement on applicants, it does not significantly reduce this discretion; as the LAPD notes (and the police-officer plaintiffs do not deny), it "relies predominantly on subjective oral examinations" in selecting officers for promotion.

*See Jeffries v. Turkey Run Consol. Sch. Dist.,* 492 F.2d 1, 4, n. 8 (7th Cir.1974) (opinion by Stevens, J.). Otherwise, as then-Judge Stevens explained, "every time a citizen [i]s affected by governmental action, he would have a federal right to judicial review." *Id.* Put simply, not every social injustice has a judicial remedy. *See Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."). The federal judiciary is not a good-government watchdog; the Due Process Clause is not the "Fairness Clause."

Thus, the police officers have not even arrived at the substantive due process threshold. They have asserted no cognizable property or liberty interest.

**B**

▮▮▮ Moreover, we note that, even if there were a constitutionally protected property or liberty interest in a promotion, which there is not, the police officers still could not prevail. The Due Process Clause takes effect only if there is a *deprivation* of a protected interest. The police officers have not shown any causal connection between the government's alleged cronyism and their failure to be promoted.

Nunez took the exam only once, in 1994. Although he demonstrated that three of the applicants that year lacked the requisite experience to take the exam, none of the three was promoted to the position of lieutenant, or even allowed to finish the exam. Thus, even if the LAPD had a secret policy of letting favored unqualified applicants sit for the exam, this policy did not preclude Nunez from being promoted.

Gomez took the examination five times. However, as explained above, any claims arising from the 1985, 1987, 1989, and 1991 exams are barred by the statute of limitations. The only surviving claim is the one arising out of the 1994 test. Gomez cannot show causation with regard to this exam for two reasons: first, as discussed above, there is no evidence that any inexperienced candidates were promoted that year; and second, Gomez received a failing score on the written exam, 56.1%, which made him ineligible for a promotion.

Vlaskamp sat for the exam twice, but finished it only once, in 1989.[9] The district court noted that he "failed to provide ... any competent admissible evidence demonstrating any unqualified individuals were allowed to take the 1989 lieutenant's examination." Vlaskamp did not challenge this conclusion on appeal.

▮▮▮ Thus, Nunez, Gomez, and Vlaskamp have failed to show any government deprivation of a protected property or liberty interest. The LAPD has not violated the police officers' substantive due process rights.[10]

**IV**

▮▮▮ Nunez also raises a First Amendment claim. After discovering that inexperienced candidates sat for the 1994 examination, he complained to the Office of the Chief of Police, the City Ethics Commission, the City Personnel Department, and the Board of Police Commissioners. Nunez alleges that, because of these protests, his superiors retaliated by scolding him and threatening to transfer or to dismiss him.

▮▮▮ To succeed on a wrongful-retaliation claim, a plaintiff must show, in the first instance, that he has suffered an adverse employment action. *See Pierce v. Texas*

9. Vlaskamp chose not to take the oral portion in 1991 even though he had passed the written portion.

10. Contrary to the police officers' assertions, the failure to establish injury and causation defeats their *"Monell* claim" against the City of Los Angeles, as well as their § 1983 claims against the other defendants. Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978), to sustain a § 1983 action against a municipality, a plaintiff must demonstrate that a governmental policy or custom has caused him injury. *See id.* at 691–94, 98 S.Ct. 2018. Even if Los Angeles had a policy or custom of promoting unqualified favorites, that policy or custom could not have caused any injury, for the reasons explained above.

*Dept. of Criminal Justice,* 37 F.3d 1146, 1149 (5th Cir.1994); *Hyland v. Wonder,* 972 F.2d 1129, 1134–36 (9th Cir.1992). Only then do we address whether the statement which motivated the retaliation is one of public concern and whether the interests of the employee outweigh the state's interest in maintaining efficient public services. *See id.* at 1136–40. Although "the type of sanction ... 'need not be particularly great in order to find that rights have been violated,'" *Hyland,* 972 F.2d at 1135 (quoting *Elrod v. Burns,* 427 U.S. 347, 359 n. 13, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)); *see also Manhattan Beach Police Officers Ass'n v. City of Manhattan Beach,* 881 F.2d 816, 818–19 (9th Cir. 1989) (denial of promotion); *Allen v. Scribner,* 812 F.2d 426, 434–35 (9th Cir.1987) (transfer to less desirable job assignment), the plaintiff must nonetheless demonstrate the loss of "a valuable governmental benefit or privilege." [11] *Hyland,* 972 F.2d at 1136. Mere threats and harsh words are insufficient. *See Pierce,* 37 F.3d at 1150; *cf. Gini v. Las Vegas Metropolitan Police Depart.,* 40 F.3d 1041, 1045 (9th Cir.1994) ("[D]amage to reputation is not actionable under § 1983 unless it is accompanied by 'some more tangible interests.'") (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

Nunez's claim does not survive this threshold inquiry. Not only has he retained his job, he has suffered no adverse employment action whatsoever. Despite the alleged efforts of his superiors, Nunez never signed or verified any allegedly false reports, which could have triggered an official reprimand. Moreover, although the LAPD did not select him for promotion, Nunez has not provided any evidence linking this decision to his criticisms.[12] All he has shown is that he was bad-mouthed and verbally threatened. It would be the height of irony, indeed, if mere speech, in response to speech, could consti-

tute a First Amendment violation. Thus, Nunez's First Amendment claim fails.

**AFFIRMED.**

FARRIS, *Circuit Judge, Concurring:*

I concur. The result is dictated by ample authority that the plaintiffs have no property interest in a promotion under the present facts. Despite this authority, the defendants should not read the opinion as giving them carte blanche to ignore established procedures where substantial interests are at stake. This is simply a matter to which the federal substantive due process clause does not speak.

I am satisfied that the facts of this action did not warrant recovery under the due process clause. Nonetheless, I concur with the caution that the opinion not be misconstrued.

---

**11.** Unlike Due Process claims, First Amendment claims need not establish an entitlement to the government benefit or privilege. *See Perry,* 408 U.S. at 597, 92 S.Ct. 2694. "[E]ven though a person has no 'right' to a valuable government benefit," the government "may not deny [the] benefit ... on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Id.*

**12.** Nunez has not even shown that his score on the oral portion of the exam was downgraded on account of his speech. Indeed, his oral test score of 86.5% was significantly higher than his barely passing score on the written portion of the test, 65.9%.