**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIAN C. MULLIGAN, an individual, *Plaintiff-Appellant*, | No. 14-55278 |
| v. | D.C. No. 2:13-cv-00836-RGK-VBK |
| JAMES NICHOLS, an individual; JOHN MILLER, an individual; THE CITY OF LOS ANGELES, an entity; TYLER IZEN, an individual; LOS ANGELES POLICE PROTECTIVE LEAGUE, a corporation, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

BRIAN C. MULLIGAN, an individual,
                    *Plaintiff-Appellant*,

              v.

ERIC ROSE, an individual,
                    *Defendant-Appellee.*

No. 14-55763

D.C. No.
2:13-cv-08298-
SVW-AGR

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted March 7, 2016
Pasadena, California

Filed August 29, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges and Frederic Block,* Senior District Judge.

Opinion by Judge Clifton

---

* The Honorable Frederic Block, Senior U.S. District Judge for the
Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment and judgment entered following a jury trial in an action brought pursuant to 42 U.S.C. § 1983 and state law by Brian Mulligan who alleged, among other things, that Los Angeles police officers together with City of Los Angeles officials and the police officers' union retaliated against him for exercising his First Amendment rights.

Mulligan was injured in an altercation with two police officers and subsequently filed an administrative claim against the City of Los Angeles, alleging that the officers had acted unlawfully. The police officers' union, allegedly with assistance from City officials, responded by accusing Mulligan of being a drug abuser and of having acted aggressively toward the officers. The episode attracted publicity, and Mulligan lost his job with Deutsche Bank.

The panel held that the statements allegedly made by defendants against Mulligan were not sufficiently adverse to support a claim of First Amendment retaliation. The defendants did not make any decision or take any state action affecting Mulligan's rights, benefits, relationship or status with the state. Nor could Mulligan show the loss of a valuable governmental benefit or privilege. The panel concluded that although Mulligan's reputation was undoubtedly damaged by the increased media attention,

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which eventually resulted in the loss of his job, such reputational harm is not actionable under § 1983 unless it is accompanied by some more tangible interests.

The panel held that the district court did not err by granting summary judgment to defendants on Mulligan's state law negligence claim. The panel held that the causal relationship between the allegedly negligent pre-force conduct of police officers and the later use of force was too attenuated. The panel affirmed the district court's evidentiary rulings excluding evidence: (1) that Mulligan was not ultimately charged with any crime for his conduct on the night on the incident; and (2) that one of the officers involved in the incident had previously been accused of on-duty sexual assault. Finally, the panel held that once the jury had found that the officers did not act unlawfully, there was no basis for the negligent-supervision claim against the City.

## COUNSEL

Jennifer Mira Hashmall (argued) and Louis R. Miller, Miller Barondess LLP, Los Angeles, California, for Plaintiff-Appellant.

Jules S. Zeman (argued), McKenna Long & Aldridge LLP, Los Angeles, California, for Defendant-Appellee James Nichols.

Blithe Smith Bock (argued), Deputy City Attorney; Amy Jo Field, Assistant City Attorney; Michael N. Feuer, City Attorney; Office of the Los Angeles City Attorney, Los Angeles, California; for Defendants-Appellees City of Los Angeles and John Miller.

Alexander H. Cote (argued), Amos A. Lowder, Angela M. Machala, and David C. Scheper, Scheper Kim & Harris LLP, Los Angeles, California, for Defendants-Appellees Los Angeles Police Protective League, Tyler Izen, and Eric Rose.

## OPINION

CLIFTON, Circuit Judge:

The First Amendment of the Constitution protects citizens from attempts by government officials to chill their speech. One question presented by this case is whether that same constitutional guarantee also requires those officials to remain silent when accused of misconduct, lest they risk liability for unlawful retaliation. We conclude that it does not.

Plaintiff Brian Mulligan was injured in an altercation with two Los Angeles Police Department (LAPD) officers. Mulligan filed an administrative claim against the City of Los Angeles, alleging that the officers had acted unlawfully. The police officers' union, the Los Angeles Police Protective League (LAPPL), allegedly with assistance from City officials, responded by accusing Mulligan of being a drug abuser and of having acted aggressively toward the officers. Because he was a prominent business executive connected with the entertainment industry, the episode attracted publicity, and Mulligan lost his job.

Mulligan brought 42 U.S.C. § 1983 and state-law claims against the City, LAPD officers James Nichols and John Miller, the LAPPL, and LAPPL officials Tyler Izen and Eric Rose. He presented claims based both on his initial interactions with the LAPD officers and on the subsequent

publicity, which Mulligan contended constituted unlawful retaliation against him for exercising his First Amendment rights.

The district court granted summary judgment in favor of Defendants on the unlawful retaliation claim and on Mulligan's claim that the LAPD officers acted negligently. Mulligan's other claims proceeded to trial, and the jury found in favor of Defendants on all issues that were before it. Judgment was entered for Defendants. Mulligan appeals on several grounds. We affirm.

## I. Background

The events behind this lawsuit began on May 15, 2012. The parties intensely dispute what happened that night, but they agree that LAPD officers Nichols and Miller first encountered Mulligan near the entrance to Occidental College in the Eagle Rock area of Los Angeles. The officers responded to 911 calls reporting that a man fitting Mulligan's description was acting erratically. After taking Mulligan back to his car in a nearby street, the officers transported and checked Mulligan into a motel.[1]

Mulligan left the motel later that night. On the streets near the motel, he once again encountered Officers Nichols and Miller. The parties' accounts as to what happened next were very different. Mulligan testified that he tried to flee from the

---

[1] The precise reason why the officers took Mulligan to the motel is one of the facts about which the parties disagree. Mulligan asserts that he was taken to the motel against his will. The officers testified at trial that Mulligan, who appeared disoriented, asked them to take him to the motel to "sleep it off."

officers as soon as he caught sight of them. The officers followed, chasing him and blocking his escape. They then hit him in the face with a baton, jabbed his back, and slammed his face into the asphalt.

The officers testified, in contrast, that they found Mulligan running down a street near the motel while screaming and attempting to open locked cars. They then pursued Mulligan, who continued fleeing despite their repeated calls for him to stop. Mulligan then began charging at the officers, forcing Miller to use his baton to subdue him. With the help of a third officer, they managed to handcuff Mulligan and called an ambulance to take him to a hospital.

The incident and Mulligan's subsequent administrative claim against the City attracted significant media attention. Mulligan was at the time an executive with Deutsche Bank and had formerly been chairman of Fox Television and co-chairman of Universal Pictures. The officers' police report was leaked to news outlets, which published stories that included the allegation that Mulligan was under the influence of drugs at the time of the incident. The media pressure intensified on October 15, 2012, when the LAPPL issued a press release accusing Mulligan of being a frequent user of bath salts.[2] The press release included a leaked tape of a conversation between Mulligan and an officer of the Glendale Police Department that took place on May 13, two days

---

[2] "Bath salts" is the popular term for a type of synthetic stimulant with similar effects to amphetamines and cocaine. Drug Enforcement Agency, *Bath Salts or Designer Cathinones (Synthetic Stimulants)*, http://www.dea.gov/druginfo/drug_data_sheets/Bath_Salts.pdf (last visited, August 22, 2016) (available at https://perma.cc/9MVH-V5XM). Bath salts have serious side effects, including agitation, insomnia, paranoia, delusions, and panic attacks. *Id.*

before the Eagle Rock incident. In the conversation, Mulligan admitted to having used bath salts approximately twenty times. Because of the press release and associated negative media coverage, Mulligan lost his job at Deutsche Bank.

Mulligan filed his complaint in federal district court against the City, Officers Nichols and Miller, the LAPPL, and Tyler Izen, the LAPPL's president, in February 2013. He alleged that the City, LAPPL, and Izen had retaliated against him for exercising his First Amendment right to file an administrative claim against the City. He also alleged excessive force claims under both Section 1983 and California law, as well as state-law assault and battery, false imprisonment, police negligence, and negligent supervision claims against the officers and the City. A separate complaint alleging a substantively identical retaliation claim against Eric Rose, the LAPPL's publicist, was filed in November 2013.

Defendants filed motions for summary judgment. The district court granted summary judgment to Defendants on the retaliation claim, concluding that Mulligan had not demonstrated the existence of retaliatory intent.[3] The district court also granted summary judgment for Defendants on the false imprisonment and police negligence claims. Summary judgment was denied on the negligent supervision, excessive force, and assault and battery claims.

---

[3] The complaint against Rose was assigned to a different district judge, who dismissed that claim based on issue preclusion following the entry of summary judgment on the retaliation claim in the first action. The dismissal of the complaint against Rose is also challenged in this appeal.

The court bifurcated the trial, such that the first phase would cover the excessive force claim, while the second phase would cover the negligent supervision claim and damages. As noted above, the jury found in favor of Defendants in the first phase of the trial, which the district court concluded made the second phase unnecessary.

Mulligan presents several arguments on appeal. First, he contests the district court's grant of summary judgment in favor of Defendants on his First Amendment retaliation claim. Second, he argues that the district court erred in granting summary judgment to Defendants on his claim that the officers' use of force against him was negligent. Third, he challenges two of the district court's evidentiary rulings during the excessive force phase of the trial. Finally, he contends that the district court erred in not proceeding to the second phase of the trial, involving his negligent supervision claim.

## II. First Amendment Retaliation Claim

Mulligan alleges that the City, LAPPL, Izen, and Rose[4] retaliated against him for the exercise of his First Amendment rights, in violation of 42 U.S.C. § 1983. Mulligan contends that the accusations by the LAPPL that he was a regular user of bath salts, along with the accompanying media leaks of the

---

[4] Mulligan's appeal of the dismissal of his action against Rose rests entirely on his contention that summary judgment should not have been entered against him on the retaliation claim in the first lawsuit. He does not dispute the application of issue preclusion in the second lawsuit if the summary judgment was proper. Because we hold that the summary judgment was properly granted, we also hold that Mulligan's separate retaliation suit against Rose was properly dismissed. We will not discuss the action against Rose separately.

police report of the incident and the tape of his conversation at the Glendale Police Department, in which he admitted to his past bath salts use, constituted a smear campaign meant to deter him from proceeding with his legal claim against the officers and City. He also alleges that the City actively participated in that campaign, making the LAPPL and its officials joint state actors. We conclude that the facts alleged by Mulligan do not give rise to a cognizable claim of First Amendment retaliation.

To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). It is uncontested that Mulligan's decision to file a claim against the City is worthy of constitutional protection.

Ordinarily, the adverse retaliatory actions complained of by plaintiffs are "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Id.* at 544 (alteration in original) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). But that is not the situation here. Instead, the essence of Mulligan's claim is that the City and LAPPL chilled his right to speak freely by engaging in speech of their own that significantly damaged his reputation and ultimately caused him to lose his job.

Retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves. The First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377 (1984)). That marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own. *See Bond v. Floyd*, 385 U.S. 116, 136 (1966) ("The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.").

In accordance with these principles, we have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim. In *Gini v. Las Vegas Metropolitan Police Department*, 40 F.3d 1041, 1043–44 (9th Cir. 1994), the plaintiff alleged that she had lost her federal job as a result of allegedly defamatory statements made by a city police officer to her federal superiors following her filing of an Internal Affairs complaint. We affirmed the dismissal of her retaliation claim against the city. *Id.* at 1045. We noted that an act of defamation by government officials was insufficient to create a right to a remedy under the First Amendment in the absence of "state action affecting [a plaintiff's] rights, benefits, relationship or status with the state." *Id.* Similarly, in *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998), which involved a claim by a police officer against his government employer, we held that "[m]ere threats and harsh

words" are not ordinarily sufficient to constitute an adverse employment action for purposes of a First Amendment claim. As we stated in *Nunez*, "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Id.*

As was the case in *Gini* and *Nunez*, the accusations and media leaks by the LAPPL and its leadership are not enough to demonstrate a constitutional violation. The Defendants in this case did not "make any decision or take any state action affecting [Mulligan's] rights, benefits, relationship or status with the state." *Gini*, 40 F.3d at 1045. Nor can Mulligan show "the loss of 'a valuable governmental benefit or privilege.'" *Nunez*, 147 F.3d at 875 (quoting *Hyland v. Wonder*, 972 F.2d 1129, 1136 (9th Cir. 1992)). Although Mulligan's reputation was undoubtedly damaged by the increased media attention, which eventually resulted in the loss of his job, such reputational harm "is not actionable under § 1983 unless it is accompanied by 'some more tangible interests.'" *Gini*, 40 F.3d at 1045 (quoting *Patton v. Cty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988)).[5]

---

[5] We note that we do not understand *Gini* and *Nunez* to stand for the proposition that speech by government officials can *never* give rise to a claim of First Amendment retaliation in the absence of a loss of tangible rights or government benefits. *See Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003) (stating that *Nunez* does not create "an exclusive, category-based limitation on the kind of retaliatory action that is actionable under the First Amendment," nor does it mean that "the government is allowed to take severe retaliatory actions . . . because those actions do not result in the loss of a valuable governmental benefit or privilege"). Indeed, we recognize that "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).

Our decision in *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999), is not to the contrary. There, we concluded that evidence that police officers had made false accusations of criminal activity against members of an environmental activist group was sufficient to justify a First Amendment claim by the group's members. *Id.* at 1302–03. The accusations in *Mendocino* were made in the context of a police investigation and contributed to arrests and search warrants aimed at the activists. *Id.* at 1289–91. That was speech that did more than simply damage the plaintiffs' reputation, it also intimated that punishment would imminently follow.

The approach we take here and have taken in the past is consistent with the views of other circuits. The circuit courts that have considered the issue have required plaintiffs alleging government retaliation that takes the form of speech to meet a high threshold. For example, the Fourth Circuit has held that in situations "where a public official's alleged retaliation is in the nature of speech," a citizen's First Amendment rights are not violated "in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000). Other circuits have adopted similar tests. *See, e.g. Goldstein v. Galvin*, 719 F.3d 16, 30–31 (1st Cir. 2013); *Hutchins v. Clarke*, 661 F.3d 947, 955–57 (7th Cir. 2011); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 68–71 (2d Cir. 1999).

Mulligan argues that the emphasis we and other courts have placed on defendants' free speech rights is mistaken because, in his view, public officials do not possess any First Amendment rights worthy of protection. We disagree. That viewpoint would cripple the ability of state actors to play a

part in public discourse. It is well established that public employees and officials retain rights to free speech. *See, e.g. Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("[P]ublic employees do not surrender all their First Amendment rights by reason of their employment."); *Blair*, 608 F.3d at 545 ("[W]e assume *all* of the Board members have a protected interest in speaking out and voting their conscience on the important issues they confront." (emphasis in original)).

Mulligan also directs our attention to the decision of the Sixth Circuit in *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998). In that case, the court held that a rape victim who had criticized the police investigation of her rape had a cognizable retaliation claim after the county sheriff responded to her criticisms by releasing "highly personal and extremely humiliating details" of the rape at a public press conference. *Id.* at 676. We need not decide now whether we agree that the First Amendment would permit a retaliation claim based on the disclosure of deeply private personal details like those at issue in *Bloch*, because Mulligan's claim does not remotely rise to the same level. Although his taped admission of previous bath salts use was undoubtedly embarrassing, statements made as part of a conversation voluntarily entered into with a police officer, without any promise of confidentiality, are not of the same degree of constitutional magnitude as the retaliatory conduct in *Bloch*, which the Sixth Circuit concluded implicated the plaintiff's fundamental privacy rights. *Id.* at 686.[6]

---

[6] The City and LAPPL also argue in their briefs that summary judgment was proper for the reason that Mulligan's claim solely involves the conduct of the LAPPL, a private actor, and is therefore not actionable under Section 1983. The City separately argues that even if the LAPPL and its officers unlawfully retaliated against Mulligan, the City itself could

## III. Police Negligence Claim

Mulligan next contends that the district court erred in granting summary judgment to Defendants on his state-law claim that Officers Nichols and Miller acted negligently in their use of force against him. In light of the jury verdict in favor of the officers at trial, Mulligan does not argue that the officers' use of force was itself negligent, but he asserts that the officers' conduct prior to the specific acts that involved force violated California law. We review the district court's grant of summary judgment de novo. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

Under California law, negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cty. of San Diego*, 305 P.3d 252, 254 (Cal. 2013). Thus, negligence claims under California law encompass a broader spectrum of conduct than excessive force claims under the Fourth Amendment. *Cf. Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002) ("[E]ven if an officer negligently *provokes* a violent response, that negligent act will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation." (emphasis in original)).

Mulligan asserts that the officers' decision to take him to the motel against his will was sufficient to create a triable

---

not be held responsible under the rules established in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Because we conclude that the conduct at issue was not a violation of Mulligan's constitutional rights, we do not address these alternative arguments.

issue of material fact as to whether the officers' pre-force conduct was negligent. We disagree. Even "viewing the evidence in the light most favorable" to Mulligan for purposes of summary judgment, *Hawn*, 615 F.3d at 1155, Mulligan has failed to demonstrate a sufficiently close causal link between the officers' decision to take him to the motel and their eventual use of force. In *Hayes*, the California Supreme Court held that the pre-deadly-force theory of negligence liability was applicable to the decision of police officers to enter a residence with knowledge that a potentially suicidal man was in the house. *Hayes*, 305 P.3d at 254.[7] Immediately afterwards, the officers shot and killed the man, who had walked toward the officers carrying a knife. *Id.*

The causal relationship in this case between the allegedly negligent pre-force conduct and the later use of force is far more attenuated. The events at the motel took place significantly earlier in time and in a different location than the later altercation between Mulligan and the officers. California law does not support the existence of negligence liability in these circumstances. We therefore affirm the district court's grant of summary judgment.

---

[7] The California Supreme Court did not address whether decisions before non-deadly force can be actionable negligence, but addressed this issue only in the context of "deadly force." *See, e.g. Hayes*, 305 P.3d at 263 ("Our response to the Ninth Circuit's question on an issue of state law, as restated by this court, is this: Law enforcement personnel's tactical conduct and decisions preceding the use of *deadly* force are relevant considerations under California law in determining whether the use of *deadly* force gives rise to negligence liability." (emphasis added)).

## IV. Evidentiary Rulings

Mulligan challenges the district court's exclusion of two pieces of evidence during the trial of his excessive force claims. A district court's evidentiary rulings are reviewed for abuse of discretion. *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003). We conclude that the district court did not abuse its discretion in excluding the contested evidence.

Mulligan first argues that the district court erred in excluding evidence that he was not ultimately charged with any crime for his conduct on the night of the incident. The evidence was excluded as irrelevant. In Mulligan's view, the evidence was relevant in that it contradicted the officers' allegations that Mulligan had been acting violently and had been attempting to break into locked cars before he was detained. The district court did not abuse its discretion under the circumstances. Even assuming that there was some marginal relevance to the evidence, it was properly excluded under Rule 403 because "its probative value [was] substantially outweighed by a danger of . . . confusing the issues, misleading the jury, [or] undue delay." Fed. R. Evid. 403. Any probative value here was minimal given that many factors inform a prosecutor's decision to press charges other than whether the events being investigated actually occurred. A contrary approach might motivate a prosecutor to pursue a criminal charge simply to avoid an inference to that effect. Moreover, any probative value was outweighed by the possibilities that a jury unfamiliar with prosecution practices may have been confused as to the significance of the lack of charges against Mulligan or that substantial trial time might have been taken up by a digression into the prosecutor's decision-making process.

Mulligan also contends that the district court erroneously excluded evidence that Officer Nichols had previously been accused of on-duty sexual assault. It was not an abuse of discretion for the district court to exclude that evidence, either. The allegations against Nichols had nothing to do with the excessive force claim at issue in the trial. Evidence of prior bad acts is not admissible except to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The accusations that Nichols had sexually assaulted vulnerable women involved conduct distinct from the excessive force allegations at issue in Mulligan's case.[8]

## V. Negligent Supervision Claim

Mulligan finally argues that the district court erred in not proceeding to trial on his negligent supervision claim against the City. The district court acted properly in not proceeding to the second phase of the trial. Once the jury had found that the officers did not act unlawfully, there was no basis for a claim against the City that those officers had been negligently supervised.

---

[8] Mulligan has filed a motion for judicial notice of a felony complaint against Officer Nichols arising from the same conduct that was the subject of the sexual assault allegations. The complaint was filed on February 16, 2016, more than two years after the trial concluded. It could not have been considered by the district court at the time it made its evidentiary determinations, so we deny the motion. We do not have reason to consider whether the fact of a felony complaint filed prior to trial would have been admissible.

**VI.    Conclusion**

We affirm the judgments of the district court. The statements allegedly made against Mulligan as joint state actions by the LAPPL were not sufficiently adverse to support a claim of First Amendment retaliation. Consequently, the district court's grant of summary judgment for that claim was proper. Similarly, the district court did not err in its decisions regarding Mulligan's police negligence, excessive force, and negligent supervision claims.

**AFFIRMED.**