NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 16 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JANE DOE, an individual; et al., | No. 18-56436 |
| Plaintiffs-Appellants, | D.C. No. 2:18-cv-00905-PA-FFM |
| v. | |
| PASADENA UNIFIED SCHOOL DISTRICT; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted February 3, 2020
Pasadena, California

Before: IKUTA and LEE, Circuit Judges, and MARBLEY, Chief District Judge.**

Jane Doe, an undocumented immigrant, and her children sued Pasadena

Unified School District and school principal Juan Ruelas for numerous constitutional

violations. Doe alleges that Ruelas threatened to call immigration if she complained

about his school lunch policy to the school board. The district court granted

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
\*\* The Honorable Algenon L. Marbley, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

1

Pasadena Unified School District's and Ruelas' summary judgment motion. We review de novo the district court's summary judgment decision. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). We affirm.

1. <u>Equal Protection Claim</u>. While Ruelas' threat may be unseemly and unbecoming of a school principal, Doe has not presented evidence that his threat — which was never acted upon — denied her or her children equal protection of the law.

Doe claims that Ruelas' threat caused her children emotional distress, interfering with their equal education opportunities. She relies on *Brown v. Board of Education* to argue that psychological impact on children can violate the equal protection clause. But Ruelas' single instance of a threat — no matter how inappropriate — cannot compare to the shameful chapter in our nation's history of sustained and systematic segregation. Moreover, the *Brown* court relied on expert evidence that long-standing segregation policies had a psychological effect on minority students and hindered their ability to learn. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954), *supplemented* 349 U.S. 294 (1955). Doe, on the other hand, has not presented any such evidence.

Doe's Equal Protection claim also fails because it amounts to a First Amendment retaliation claim, not an Equal Protection claim. Doe has not shown that Ruelas threatened her *because of* her immigration status. "To state a claim

2

under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff *based upon* membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) (emphasis added); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") (quoting another source). Here, Ruelas threatened Doe not because of her immigration status, but rather because of her threat to complain about his school lunch policy. While Ruelas tailored his threat to her immigration status, he did not threaten her because of it. So Doe's complaint should be analyzed under the rubric of the First Amendment.

2. <u>First Amendment Claim</u>. To prevail on her First Amendment retaliation claim, Doe must present evidence that "(1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Doe must also provide evidence of Ruelas' subjective "[i]ntent to inhibit speech." *See Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Doe sets forth two bases for her First Amendment retaliation claim.

3

First, she claims that Ruelas retaliated by limiting her volunteer opportunities. But she has not pointed to any evidence that Ruelas in fact curtailed them. To the contrary, she continued to volunteer and even won a volunteering award. Doe's claim that she was forced to participate in a "distinct" volunteer program also fails because Doe has not shown, or even alleged, that the "distinct" program was inferior.

Second, she claims that Ruelas retaliated by threatening to call immigration enforcement. Whether a threat can support a First Amendment retaliation claim depends on the individual circumstances of the case. In the employment context, this court has said that "[m]ere threats and harsh words are insufficient" to constitute a retaliation claim without plaintiff also showing she suffered harm as a result (*e.g.*, loss of a tangible interest or government benefit). *See Nunez v. City of Los Angeles*, 147 F.3d 867, 874–75 (9th Cir. 1998) (supervisor allegedly threatened to "transfer or dismiss" plaintiff). In the prison context, an implicit threat can create apprehension in a prisoner sufficient to support a First Amendment retaliation claim. *See Brodheim v. Cry*, 584 F.3d 1262, 1270–71 (9th Cir. 2009). More recently in *Mulligan v. Nichols*, this court suggested in dicta that a government official's speech may support a First Amendment retaliation claim — even absent the loss of tangible rights or government benefits — under certain circumstances. 835 F.3d 983, 989 n.5 (9th Cir. 2016).

This court's *Brodheim* case does not control here because a school principal does not have the same authority over a parent that a prison guard has over an inmate. On the other hand, the important interest in allowing government supervisors to speak freely in managing their employees (as in *Nunez*) may not apply with the same force in this case, where Ruelas' threat did not have a plausible pedagogical purpose.

We, however, need not decide whether Ruelas' threat implicates the First Amendment because Ruelas is entitled to qualified immunity, even assuming Doe has a viable claim.[1] Ruelas' conduct did not violate Doe's "clearly established . . . constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting another source). The Supreme Court has cautioned that a constitutional right is "clearly established" only if a statute or precedent "squarely governs the specific facts at issue." *Id.* at 1153 (internal quotation marks omitted). Here, in light of the mixed case law in this circuit, parents did not enjoy a "clearly established" right to be free from a school official's threats. *Id.* at 1152–53 (warning courts "not to define clearly established law at a high level of generality").[2]

---

[1] Although the district court did not address qualified immunity, we may affirm on the basis of qualified immunity where, as here, it is "supported by the record." *Norse v. City of Santa Cruz*, 629 F.3d 966, 975, 978 (9th Cir. 2010) (en banc).

[2] For purposes of qualified immunity, Doe cannot rely on the language in *Mulligan v. Nichols*, 835 F.3d at 989 n.5, because that case was decided in 2016, and Ruelas' threat occurred in 2015. *See Kisela*, 138 S. Ct. at 1152 (noting that the

3.    Due Process Claim.  Doe's Due Process claim fails because she does not have a protected property or liberty interest in volunteering.  To obtain relief under § 1983 for a procedural due process violation, Doe must prove: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process."  *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting another source).  "[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit *must* be granted or if the statute sets out the *only* conditions under which the benefit may be denied."  *Allen v. Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990) (quoting another source).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Doe relies on sections 35021 and 51101 of the California Education Code, but both statutes provide government officials discretion to deny parents opportunities to volunteer.  Cal. Educ. Code § 35021 (stating that any person "may be permitted" by the school board to serve as a school volunteer); Cal. Educ. Code § 51101 (stating that parents "have the right and should have the opportunity" to volunteer "with the approval, and under the direct supervision, of the teacher"); *see also Gonzales*, 545

clearly established question "is judged against the backdrop of the law at the time of the conduct") (quoting another source).

6

U.S. at 759–61 (reasoning that even statutes with mandatory language such as "shall use every reasonable means" may still afford the official some discretion). In any event, as noted above, she has not presented evidence Ruelas limited her volunteer opportunities.

4.　Municipal Liability.　Doe argues that Pasadena is subject to municipal liability because it was aware of Ruelas' retaliatory conduct.　To impose liability on a municipality under § 1983 for an employee's conduct, Doe must establish:

> (1) that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).　Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."　*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

The evidence presented is insufficient to establish municipal liability.　Doe cites evidence that the school board knew about Ruelas' retaliatory threats against her and other parents and teachers.　But Doe does not point to any school district policy that amounted to "deliberate indifference" to her constitutional rights and does not explain how outstanding discovery could contain such evidence.

7

Additionally, Doe's *Monell* claim fails because we have rejected her claims that Ruelas violated her constitutional rights. *See Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).

5.    <u>Rule 56(d) Request</u>.  The district court did not abuse its discretion in denying Doe's Rule 56(d) request because she sought duplicative and irrelevant evidence. *See Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012).  Doe thus did not show that she was missing "facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d).

**AFFIRMED**.

*Jane Doe v. Pasadena*, 18-56436

MARBLEY, Chief District Judge,* **DISSENTING.**

### I.       Equal Protection Claim

A plaintiff bringing an Equal Protection claim must prove intentional discrimination, at least in part, because of plaintiff's protected status. In order to survive a motion for summary judgment by the School District, "there is no specific test that an equal protection plaintiff is required to meet" and "a plaintiff must only produce evidence sufficient to establish a genuine issue of fact as to the defendant's motivations." *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).

The stigma and loss of dignity from the school principal's threat to call immigration authorities on the Student Plaintiffs' mother singled them out for discriminatory treatment on the basis of their national origin in violation of the Equal Protection Clause. This stigma is a recognized harm that inherently interferes with their ability equally to access education. Indeed, this reasoning is fundamental to the desegregation cases. It is the "feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone." *Freeman*

---

*        The Honorable Algenon L. Marbley, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

1

*v. Pitts*, 503 U.S. 467, 485 (1992) (quoting *Brown v. Board of Education*, 347 U.S. 483, 494 (1954)).

The majority erroneously concludes Principal Ruelas's threat was motivated only by Doe's intention to file a complaint and therefore should be analyzed exclusively under the First Amendment. The majority's approach ignores that the heart of Ruelas's threat—to call immigration enforcement—was motivated, at least in part, by Plaintiffs' perceived national origin. The majority admits Ruelas "tailored his threat to [Doe's] immigration status" but simultaneously claims "he did not threaten her because of it." This conclusion is not supported by the record or the case law. Plaintiffs are entitled to an inference and opportunity to demonstrate at trial that Ruelas's threat was made on the basis of Doe's perceived national origin and thus in violation of the Equal Protection Clause. *See Vega v. Hempstead Union Free School District*, 801 F.3d 72, 82 (2d Cir. 2015) ("[w]hen a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause").

## II.    First Amendment Claim

The majority declines to reach the merits of Doe's First Amendment claim because it finds Ruelas is entitled to qualified immunity. I respectfully dissent and would find Ruelas's threat to call immigration enforcement violates the First

Amendment and that the constitutional right to be free from retaliation is clearly established.

Defendants do not dispute that Doe was engaged in protected activity or that the protected activity was a motivating factor in Defendants' conduct, so the question is whether Ruelas's threat would chill a person of ordinary firmness from exercising their constitutional rights. *See Pinard*, 467 F.3d at 770. The threat to call immigration enforcement "intimated that punishment would imminently follow" if Doe filed a complaint against Ruelas. *Mulligan*, 835 F.3d at 990. *See also Brodheim*, 584 F.3d at 1270. A reasonable juror could find that a school principal's threat to expose an individual who appears undocumented to federal immigration enforcement would have a chilling effect on speech.

Ruelas is not entitled to qualified immunity because "[t]he constitutional right to be free from retaliation [is] clearly established." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citing *Krainski v. Nevada ex rel. Bd. Of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010)). The majority cites *Nunez v. City of Los Angeles*, in which the plaintiff complained about his police department's practice of promoting inexperienced, favored candidates. The Court found that his employer's scolding and threats to dismiss or transfer him were "[m]ere threats and harsh words" and he actually suffered "no adverse employment action whatsoever." 147 F.3d at 870-75.  This Court later clarified in *Coszalter v. City of Salem*, that the

3

relevant inquiry under the First Amendment is "whether the state had taken action designed to retaliate against and chill political expression" and distinguished *Nunez* as a case where "the would-be retaliatory action is so insignificant that it does not deter the exercise of First Amendment rights." 320 F.3d 968, 975 (9th Cir. 2003). Principal Ruelas's threat to call immigration enforcement, which carries with it the threat of deportation, cannot be characterized as a de minimis harm, or mere "bad-mouthing." *Id.* at 976.

The Court need not have decided a case on precisely analogous facts for a constitutional right to be considered clearly established. In *O'Brien*, this Court held "[r]etaliation for engaging in protected speech has long been prohibited by the First Amendment," therefore "[a] reasonable official…would thus have known that taking disciplinary action against O'Brien in retaliation for the expression of his views violated his First Amendment rights." 818 F.3d. at 936. *See also Pinard*, 467 F.3d at 770. Likewise, in *Brodheim* this Court concluded, "we [have] made [] clear… that an allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim." 584 F.3d 1262, 1270 (9th Cir. 2009). The majority finds *Brodheim* inapplicable, but this Court has made clear there is "no reason why a different standard should apply" in prison versus non-prison contexts. *Id.* A reasonable official in Ruelas's shoes would have known that a threat to call

4

immigration enforcement for engaging in protected speech was retaliation prohibited by the First Amendment and as such, he is not entitled to qualified immunity.

### III.    Due Process Claim

The majority claims Doe does not have a protected property or liberty interest in volunteering and relies on *Allen v. City of Beverly Hills*, where this Court held there was no property interest in continued employment because of the City's significant discretion in making lay-off decisions. 911 F.2d at 371. However, the California Education Code, on which Plaintiff bases her claim, grants much less discretion than the laws at issue in *Allen*. While § 35201 uses permissive language ("may be permitted"), § 55101 contains the mandatory language that parents and guardians "have the right" "to participate in the education of their children," including by volunteering. The school's discretion to prohibit parents or guardians from volunteering is significantly constrained. The statute confers the right "[e]xcept as provided in subdivision (d)," which creates an exception to parents' right to volunteer when it would conflict with a valid restraining order, protective order, or order for custody or visitation. Cal. Educ. Code § 51101(d). *See Macias v. Flippini*, 2018 WL 2264243, at *8 (E.D. Ca. 2018) (finding a due process right derived from Cal. Educ. Code § 51101 and Cal. Penal Code § 626.4 for parents not to be banned indefinitely from campus without adequate procedures). *See also Kaiser Foundation Health Plan, Inc. v. Burwell*, 147 F.Supp.3d 897 (N.D. Cal. 2015) ("Whether an

5

expectation of entitlement is sufficient to create a property interest will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the decisionmaker."). I would find Plaintiff has at least alleged a triable issue of material fact as to whether her Due Process right to volunteer at her children's school were violated by Ruelas's threat to call immigration enforcement.

## IV. Municipal Liability

The Supreme Court in *Monell v. Department of Social Services of City of New York* held that § 1983 imposes liability on a municipality when an employee acts "under color of some official policy" thereby causing a violation of another's constitutional rights. 436 U.S. 658, 692 (1978).

The majority concludes without explanation that Doe has not alleged the school district had a policy that amounted to deliberate indifference and that the school board's knowledge of Ruelas's threats is not enough. But the school district need not have an official policy to be held liable under *Monell*. Rather, "a custom" can be "inferred from a pattern of behavior" even "toward a single individual," that would cause a jury to conclude there was a custom or practice that amounted to deliberate indifference. *Oyenik v. Corizon Health Inc.*, 696 Fed. Appx. 792, 794-95 (9th Cir. 2017). A municipality also can be held liable for an *isolated* constitutional violation when the person causing the violation has "final policymaking authority"

6

or "if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1235-38 (9th Cir. 1999). Plaintiff alleges she repeatedly made the School Board, the District's final policymaking authority, aware of Ruelas's threats, creating a triable issue of fact as to whether the school district's inaction constituted deliberate indifference to her constitutional rights.