NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 28 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHIEN VAN BUI, individually, and as successor in interest to the Estate of Vinh Van Bui; AI HUYNH,

    Plaintiffs-Appellees,

v.

CITY AND COUNTY OF SAN FRANCISCO; AUSTIN WILSON, San Francisco Police Officer; TIMOTHY A. ORTIZ, San Francisco Police Officer,

    Defendants-Appellants.

No.    14-16585

D.C. No. 3:11-cv-04189-LB

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted September 12, 2016
San Francisco, California

Before:  GOULD and BERZON, Circuit Judges, and SESSIONS,[**] District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

This case concerns the fatal shooting of Plaintiff-Appellees' ("Plaintiffs'") son Vinh Van Bui ("Bui") by Defendant-Appellant police officers Austin Wilson and Timothy Ortiz, both of whom were employed by the City and County of San Francisco (together with the officers, "Defendants"). Defendants appeal the district court's order denying in part their motion for summary judgment. We have jurisdiction over the appeal to the extent it turns on the legal question whether Defendants "would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in [Plaintiffs'] favor." *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) (internal quotation marks omitted). We affirm in part, reverse in part, and remand for further proceedings.

1. Viewing the record in the light most favorable to Plaintiffs, a reasonable jury could conclude (1) that Officers Ortiz and Wilson violated Bui's constitutional rights; and (2) that those rights were clearly established at the time of the officers' challenged conduct. *See C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016). Officers Ortiz and Wilson therefore are not entitled to qualified immunity as a matter of law with respect to Plaintiffs' excessive force claim.

2

a.  First, viewing the evidence in the light most favorable to Plaintiffs, a jury could conclude that Officers Ortiz and Wilson acted objectively unreasonably when they shot Bui.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Most importantly, it was not clear that the officers had probable cause to believe that Bui "pose[d] a significant threat of death or serious physical injury to the officer[s] or others," a prerequisite for the use of deadly force to be reasonable.  *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc) (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)).

Although Bui was holding an "X-Acto" knife in his hand when he was shot, he did not raise his arm or make any other threatening gestures.  On the contrary, on Plaintiffs' facts, Bui assumed a cringing, fearful posture as he shuffled slowly down the hallway toward the officers and was turning away from the officers when they used deadly force.  Deadly force is not appropriate simply because a suspect is armed.  *See Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).  A reasonable jury could conclude that the relatively slight and somewhat impaired Bui, who made no threatening motions with the small blade in the officers' presence, did not present a significant threat of death or serious physical injury.

None of the other factors relevant to the reasonableness analysis establishes that the officers' use of deadly force was constitutional.  *See Glenn v. Washington*

3

*Cty.*, 673 F.3d 864, 872 (9th Cir. 2011) (enumerating relevant factors and stating that it is the "totality of the circumstances" that determines reasonableness). Although the officers knew that Bui previously had inflicted a small cut on a teenager with the X-Acto knife, the officers also knew her wound was not serious. *Cf., e.g.*, *Long v. City of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (considering that a suspect previously had shot two people with a rifle as one of several factors supporting a police officer's use of deadly force). It is not clear on the current record whether it is accurate to characterize Bui's failure to comply with the officers' commands to drop the X-Acto knife as an act of resistance, rather than as an expression of confusion or fear. *See Hughes v. Kisela*, 841 F.3d 1081, 1086 (9th Cir. 2016) (concluding it was a question for the jury whether the police should have perceived that a suspect who did not respond to commands to drop a knife "did not understand what was happening"). The officers did not warn Bui that they would shoot if he did not drop the X-Acto knife. A warning may well have been feasible in light of the slow pace at which Bui was moving. *See Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1235 (9th Cir. 2013) (stating that warnings should be given when feasible and concluding it was not clear that warnings were infeasible where a suspect with a knife was six feet away).

Moreover, reading the record in the light most favorable to the Plaintiffs, the officers knew that Bui was mentally ill. We have "refused to create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals," but we recognize that the government has a diminished interest in using deadly force against mentally ill individuals. *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010). The record includes expert testimony regarding specific less-intrusive methods of subduing Bui available to the officers, and, generally, could support the conclusion that the officers acted unreasonably in shooting Bui.

b. A reasonable jury could find that Officers Ortiz and Wilson violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). In making this evaluation, we look to "clearly established law . . . 'particularized' to the facts of th[is] case." *Id.* at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It was clearly established as of December 2010 that officers "may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed," including in some circumstances in which the suspect has "committed a violent crime in the immediate past." *Harris*, 126 F.3d at 1203–04. Even where a suspect was holding a rifle, a weapon more

5

imminently dangerous than the X-Acto knife at issue here, we held that it was unreasonable to shoot a suspect who did not point the weapon at the officers and was not facing the officers at the time they used deadly force. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). It was likewise well established that, "whenever practicable, a warning must be given before deadly force is employed," *Harris*, 126 F.3d at 1201 (citation omitted), and that a suspect's mental illness weighs against the use of deadly force, *see Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

It thus would have been clear to a reasonable officer in 2010 that it was unreasonable to shoot without adequate warning a mentally ill suspect walking slowly with an X-Acto knife who at no point threatened the officers with the knife and who was turning away from the officers at the time he was shot. *See Hughes*, 841 F.3d at 1090 (holding that, notwithstanding *Blanford v. Sacramento Cty.*, 406 F.3d 1110 (9th Cir. 2005), it was clearly established in May 2010 that it was unreasonable to shoot a mentally ill person who was holding a large kitchen knife in

6

a nonthreatening manner at her side, did not drop the knife when commanded, and continued to move in the direction of another woman).[1]

2.  Officers Ortiz and Wilson are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment familial interference claim.  The level of culpability necessary for official conduct to shock the conscience, and therefore to violate Plaintiffs' due process rights, depends on "whether the circumstances are such that actual deliberation is practical."  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (internal quotation marks omitted).  "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience."  *Hayes*, 736 F.3d at 1230.  Where it is not, "his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."  *Id.*

Plaintiffs principally argue for the deliberate indifference standard.  If the more stringent purpose-to-harm standard applies, Plaintiffs have not met it, as they conceded at oral argument.

---

[1]The district court also denied Defendants summary judgment on Plaintiffs' provocation theory of Fourth Amendment liability, but not on the basis of qualified immunity.  We lack jurisdiction over this part of the district court's ruling, *see Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007), but note that the Supreme Court recently invalidated the Ninth Circuit's provocation rule, *see Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1543–44 (2017).

Assuming that the deliberate indifference standard applies, there is insufficient evidence to support the conclusion that Ortiz and Wilson, subjectively, acted with "conscious or reckless disregard of the consequence[s] of [their] acts or omissions." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) (quoting *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013)).[2] Because Plaintiffs' evidence has not raised a dispute of material fact regarding whether a Fourteenth Amendment violation occurred, we reverse the district court's denial of summary judgment to the officers with respect to this claim.

3. We lack jurisdiction over the district court's ruling on Plaintiffs' state-law wrongful death claim. "A denial of summary judgment is immediately appealable when the immunity is an immunity from suit, but not when it is a mere defense to liability." *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011). The two state statutory privileges cited by Defendants, California Penal Code §§ 835a and 196, shield officers from tort liability but not from suit, and so they do not provide this court an independent basis for jurisdiction. *See Hernandez v. City of Pomona*, 46 Cal. 4th 501, 521 (2009); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 533 (2009). Neither are the state and federal law issues "inextricably intertwined" such that we

---

[2] The excessive force standard, in contrast, is an objective one concerning what a reasonable officer would understand about the governing law. The officers' state of mind is not controlling on that inquiry. *See Graham*, 490 U.S. at 397.

8

may exercise pendent jurisdiction over the state law issues, *see Puente Arizona v. Arpaio*, 821 F.3d 1098, 1109 (9th Cir. 2016), because "a broader spectrum of conduct" is relevant to the state law claim than to the Fourth Amendment claim, *Mulligan v. Nichols*, 835 F.3d 983, 991 (9th Cir. 2016).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Parties shall bear their own costs on appeal.