**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3892

_____


LENA DAVENPORT, an adult individual

v.

BOROUGH OF HOMESTEAD, a Municipal Corporation;
CITY OF PITTSBURGH, a Municipal corporation; IAN
STRANG, individually and in his official capacities as a
Police Officer of the Borough of Homestead;
JAMES ILGENFRITZ, individually and his official
capacities as a Police Officer of the Borough of Homestead;
LOUIS SCHWEITZER, individually and in his official
capacities as a Police Officer of the City of Pittsburgh;
STEPHEN MATAKOVICH, individually and in his official
capacities as a Police Officer of the City of Pittsburgh;
CALVIN KENNEDY, individually and in his official
capacities as a Police Officer of the City of Pittsburgh;
THOMAS GORECKI, individually and in his official
capacities as a Police Officer of the City of Pittsburgh, and;
NATHAN HARPER, Commander, in his official capacity as
a Chief of Police of the City of Pittsburgh;
JEFFREY DESIMONE, in his official capacity as Chief of
Police of Borough of Homestead, and; IGOR BOYKO,

individually and in his official capacity
of a Police Officer of the City of Pittsburgh

Louis Schweitzer; Stephen Matakovich;
Calvin Kennedy; Thomas Gorecki,
Appellants

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-13-cv-00250)
District Judge:  Honorable David S. Cercone

———

Argued:  May 24, 2017

Before:  HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Opinion Filed:  August 29, 2017)

Bryan Campbell
Law Offices of Bryan Campbell
310 Grant Street, Suite 2620
Pittsburgh, PA 15219

Allison N. Genard
Marshall Dennehey Warner Coleman & Goggin
600 Grant Street
2900 U.S. Steel Tower
Pittsburgh, PA 15219

John J. Hare
Shane Haselbarth   **[ARGUED]**
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
    *Counsel for Appellants*


J. Kerrington Lewis, Sr.  **[ARGUED]**
Lewis Lewis & Reilly
1040 Fifth Avenue
Pittsburgh, PA 15219
    *Counsel for Appellee*


———


OPINION OF THE COURT

———


FISHER, *Circuit Judge*.

On an early Sunday morning in January 2013, Lena Davenport was riding in the front passenger seat of a vehicle driven by her son Donald Burris, Jr. After running a red light and refusing to pull over, Burris led police officers on a nearly five-mile low speed pursuit into the City of Pittsburgh. As the pursuit entered an area with high pedestrian traffic, City of Pittsburgh Police Officers Louis Schweitzer, Stephen

3

Matakovich, Calvin Kennedy, and Thomas Gorecki each opened fire on Burris's vehicle. Davenport was struck by one of the officers' bullets. She filed this suit under 42 U.S.C. § 1983 against the officers and others alleging, *inter alia*, that the officers used excessive force in violation of both the Fourth Amendment and the Fourteenth Amendment's Due Process Clause. The District Court granted summary judgment on the basis of qualified immunity in favor of many of the defendants but denied it as to Schweitzer, Matakovich, Kennedy, and Gorecki, finding that their alleged conduct violated clearly established law. We will dismiss the appeal in part as to Gorecki and reverse in part as to Schweitzer, Matakovich, and Kennedy.

I

At about 1:38 a.m. on Sunday, January 13, 2013, Donald Burris, Jr. ran a red light in Homestead, Pennsylvania. Burris's mother, Lena Davenport, was the only passenger in his car. When a Homestead police officer attempted to stop the car, Burris did not comply. Instead, a pursuit began, heading into the City of Pittsburgh. As Burris entered Pittsburgh's South Side neighborhood on East Carson Street, several Pittsburgh police officers joined the pursuit. About 1:42 a.m., as the pursuit reached a busy area, the Sergeant of the Pittsburgh Police Department called it off.

Despite the Sergeant's orders, officers deployed spike-strips near the intersection of East Carson Street and 24th Street. It is undisputed that until reaching the 24th Street intersection, the pursuit did not jeopardize the safety of other motorists or pedestrians. However, in an attempt to avoid the spike-strips, Burris swerved between East Carson Street's inbound and outbound lanes.

As these events transpired, Officers Schweitzer,

4

Matakovich, Kennedy, and Gorecki were working approved off-duty security jobs at bars on East Carson Street. They heard about the pursuit through police radio communications.

Near the 17th Street intersection, Schweitzer was the first to shoot at Burris's car, opening fire after observing the vehicle swerve between lanes of traffic and drive toward him. He fired at the front of the vehicle three times and once more at the vehicle's rear as it passed his position. At some point near this intersection, a bullet grazed a pedestrian's back.

Between the 16th and 15th Street intersections, after attempting to clear the street of pedestrians, Matakovich looked up and saw Burris's car heading toward him from the opposite lane. He shot at the vehicle four times and claims he jumped out of the way to avoid being struck. Kennedy, who was standing near Matakovich, fired once at the vehicle. Burris again swerved between lanes and, upon reaching the 15th Street intersection, side-swiped a parked car.

As the pursuit approached the 14th Street intersection, Burris continued to swerve, hitting a car in the outbound lane and then returning to the inbound lane. Near the 13th Street intersection, at about 1:44 a.m., the pursuit ended when Burris collided with a taxicab. At or around the same time, Gorecki fired two shots directly into the driver compartment of the vehicle. The parties dispute whether Gorecki fired before or after the final collision. The taxicab's dash-camera footage shows Gorecki's conduct, but it is not clear from the video when he actually discharged his firearm. Minutes later, at 1:47 a.m, paramedics arrived. They found Davenport on the floor of the vehicle's passenger compartment, having sustained a single gunshot wound near her right eye. It is unclear which officer's bullet actually struck Davenport.

5

At no time did the pursuit exceed forty-five miles per hour. Additionally, a forensic expert's evaluation of the vehicle's bullet holes indicates that one bullet was fired directly into the passenger compartment and another was fired after the vehicle's airbags deployed. Importantly, it is unclear whether the airbags deployed before the taxicab collision.

Relevant to this appeal, Davenport brought suit under 42 U.S.C. § 1983 alleging that Schweitzer, Matakovich, Kennedy, and Gorecki violated her Fourth Amendment right to be free from excessive force and her Fourteenth Amendment right to due process. The officers moved for summary judgment on the basis of qualified immunity. The District Court identified two factual disputes that, in its view, required sending the claims against those officers to trial. The first was whether the officers intentionally or indiscriminately fired into the passenger compartment of Burris's vehicle with knowledge of Davenport's presence therein. And the second was whether the officers fired into the vehicle even though it posed little or no danger to themselves or others. A reasonable jury, the court held, could determine that, on January 13, 2013, the officers violated clearly established law. *Davenport v. Borough of Homestead*, 2016 WL 5661733, at \*19-22 (W.D. Pa. Sept. 30, 2016). The four officers appealed.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331. The collateral order doctrine provides us with jurisdiction to review the District Court's denial of the officers' claims of qualified immunity under 28 U.S.C. § 1291, but only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

6

Insofar as the District Court's order pertains to Schweitzer, Matakovich, and Kennedy, "we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (internal quotation marks omitted). However, we lack jurisdiction to review the order insofar as it pertains to Gorecki because he challenges the District Court's determination that the "pretrial record sets forth a 'genuine' issue of fact" for the jury. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."). Relying on the taxicab's dash-camera footage, Gorecki argues that the District Court should have concluded that no reasonable jury could find that he discharged his firearm into Burris's vehicle *after* the pursuit ended. Appellants' Br. 17. And Gorecki's legal challenges assume the absence of this otherwise disputed fact. Because we are unable to address the factual challenge about *when* Gorecki discharged his firearm at Burris's vehicle at this stage of the proceedings, we are precluded from addressing the derivative legal challenges. *See Johnson*, 515 U.S. at 317 ("[A]n interlocutory appeal concerning this kind of issue in a sense makes unwise use of appellate courts' time, by forcing them to decide in the context of a less developed record, an issue very similar to the one they may well decide anyway later, on a record that will permit a better decision.").

To the extent we have jurisdiction, we exercise plenary review over an appeal from a denial of summary judgment based on a lack of qualified immunity. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 174 n.3 (3d Cir. 2016). We will

7

reverse if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine if there is a genuine dispute of material fact, we "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion[.]" *Dougherty*, 772 F.3d at 986 (internal quotation marks omitted).

## III

Before reaching the merits of Schweitzer, Matakovich, and Kennedy's qualified immunity defense, we must first address an error committed by the District Court—the court's independent analysis of Davenport's Fourteenth Amendment claims. *See Davenport*, 2016 WL 5661733, at *14-15. The Supreme Court has instructed that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, an independent substantive due process analysis of an excessive force claim is inappropriate where, as here, the plaintiff's claim is covered by the Fourth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

The Supreme Court has "express[ed] no view" on whether a passenger in Davenport's position may recover under a Fourth Amendment theory. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 n.4 (2014). And the federal appellate courts appear divided on the issue. *Compare, e.g.*, *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (suggesting yes), *Vaughan v. Cox*, 343 F.3d 1323, 1328-29 (11th Cir. 2003) (same), *Fisher v. City of Memphis*, 234 F.3d 312, 318-19 (6th

8

Cir. 2000) (same), *and Pittman v. Nelms*, 87 F.3d 116, 120 (4th Cir. 1996) (same), *with, e.g.*, *Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (suggesting no in the context of a hostage situation), *and Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 794-96 (1st Cir. 1990) (same). *See also Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1212 (10th Cir. 2017) (declining to address the issue and resolving the case on other grounds). Nevertheless, the majority of circuits have suggested that a passenger in Davenport's position may seek relief under the Fourth Amendment; those circuits that have suggested otherwise reached their decisions on this issue before the Supreme Court decided *Brendlin v. California*, 551 U.S. 249 (2007).

In *Brendlin*, the Supreme Court held that in intentionally stopping a vehicle, an officer subjects not only the driver, but also the vehicle's passengers to a Fourth Amendment seizure. 551 U.S. at 254-56. It also made clear that an officer's knowledge of a passenger's presence in the vehicle is not dispositive because "an unintended person may be the object of the detention, so long as the detention is willful and not merely the consequence of an unknowing act." *Id.* at 254 (alterations and internal quotation marks omitted). And in *Brower v. County of Inyo*, the Supreme Court cautioned courts not to "draw too fine a line" in "determining whether the means that terminates the freedom of movement is the very means that the government intended." 489 U.S. 593, 598 (1989). Accordingly, even if the officers' intended application of force would have only incidentally seized Davenport, because her freedom of movement was terminated "by the very instrumentality set in motion or put in place in order to achieve" Burris's and her detention, *id.* at 599, there is no set of facts that precludes a finding of a Fourth Amendment seizure. Today we join the majority of circuits in

9

holding that a passenger shot by an officer during the course of a vehicular pursuit may seek relief under the Fourth Amendment. Because Davenport may do so, the Fourth Amendment, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. Consequently, the District Court erred in independently analyzing Davenport's Fourth and Fourteenth Amendment claims.

IV

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In resolving questions of qualified immunity, we conduct a two-part inquiry. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, we consider whether, in light of the specific context of the case, "the right was clearly established." *Id.* Although we need not address these prongs in any particular order, *Pearson*, 555 U.S. at 236, we exercise our discretion to address both "[b]ecause we believe this case will clarify and elaborate upon our prior jurisprudence in important and necessary ways." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 558 (3d Cir. 2017) (internal quotation marks omitted).

A

We first consider whether Schweitzer, Matakovich, and Kennedy's alleged conduct violated the rights secured to Davenport by the Fourth Amendment. The Fourth

10

Amendment requires that a seizure be objectively reasonable. *Graham*, 490 U.S at 396-97. Determining objective reasonableness involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). The government has an interest in ensuring public safety, and a fleeing vehicle may pose a threat to that interest. *Scott v. Harris*, 550 U.S. 372, 383 (2007). However, because our analysis "requires careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, the fact that a vehicle is in flight does not necessarily render an officer's use of deadly force objectively reasonable. The question is "whether the totality of the circumstances justified a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). We evaluate each officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," understanding that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Based on Davenport's version of facts, the District Court concluded that a reasonable jury could find that the officers intentionally shot at Davenport and that the pursuit posed no serious threat of immediate harm to others. This was error, as these assertions are "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. First, video evidence indisputably shows a heavy pedestrian presence during the course of the pursuit. And second, throughout the pursuit Burris continuously swerved between inbound and outbound lanes, which ultimately led to his colliding with three other vehicles. Considering the serious threat of immediate harm to

11

others, no reasonable jury could conclude that the officers fired at the vehicle for any reason other than to eliminate that threat.

Schweitzer shot at the vehicle with the knowledge that Burris refused to yield to officers' continued pursuit and swerved between lanes in an area with high pedestrian traffic. Matakovich and Kennedy shot at the vehicle with the additional knowledge that Burris continued the dangerous vehicular pursuit despite sustaining police fire. Given the serious threat of immediate harm to East Carson Street's many pedestrians, even if the officers knew that a passenger was in the vehicle, their conduct was objectively reasonable as a matter of law. *See id.* (In "weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person," courts must "take into account . . . the number of lives at risk."). As such, Schweitzer, Matakovich, and Kennedy are entitled to summary judgment because they did not violate Davenport's Fourth Amendment rights.

B

There is an additional and distinct basis on which we must reverse the District Court's denial of qualified immunity to Schweitzer, Matakovich, and Kennedy—their alleged conduct did not violate clearly established law. The crux of the "clearly established" analysis "is whether officers have 'fair notice' that they are acting unconstitutionally." *Mullenix*, 136 S. Ct. at 314. In other words, an officer is not entitled to qualified immunity if "at the time of the challenged conduct, the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration and internal quotation marks omitted).

12

"We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (citation and internal quotation marks omitted). Accordingly, the specific question presented by this case is whether, on January 13, 2013, the law clearly established that an officer who, in an attempt to eliminate the serious threat of immediate harm to others created by a vehicle's flight shoots the vehicle's passenger, violates that passenger's rights under the Fourth Amendment. We hold that it did not.

The District Court concluded that *Tennessee v. Garner* clearly established that the officers' alleged conduct was unlawful. *See Davenport*, 2016 WL 5661733, at \*20. *Garner* held that a "police officer may not seize an unarmed, nondangerous suspect by shooting him dead." 471 U.S. at 11. The Supreme Court, however, has applied *Garner*'s "general" test for excessive force in only the "obvious" case. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). And courts have found "obvious" cases only in the absence of a serious threat of immediate harm to others. *See, e.g.*, *Lytle*, 560 F.3d at 417 (finding an obvious case where an officer shot a passenger in a vehicle without a sufficient threat of harm to others); *Adams v. Speers*, 473 F.3d 989, 991-94 (9th Cir. 2007) (finding same where, without a sufficient threat of harm to others, an officer shot a fleeing suspect on the highway and by using deadly force actually created a serious hazard for himself and the suspect); *Smith v. Cupp*, 430 F.3d 766, 773, 776 (6th Cir. 2005) (finding same where, without a sufficient threat of harm to others, an officer shot an

13

intoxicated suspect who took control of a patrol car in a parking lot); *Vaughan*, 343 F.3d at 1331 (finding same where, without a sufficient threat of harm to others, an officer shot suspects who were merely evading arrest).

In concluding that this was such an "obvious" case, the District Court improperly ignored the serious threat of immediate harm to others posed by Burris's flight. The District Court justified limiting its analysis to the threat of harm posed by Davenport's conduct by citing *Plumhoff v. Rickard* for the proposition that "Fourth Amendment rights are personal rights that may not be vicariously asserted." *Davenport*, 2016 WL 5661733, at \*21. But acknowledging the threat of harm posed by Burris's flight neither enhances nor diminishes Davenport's Fourth Amendment rights. Rather, as discussed above, *see* Part IV-A, *supra*, it is a necessary factor of our "objective reasonableness" analysis. Given the serious threat of immediate harm to others that Schweitzer, Matakovich, and Kennedy sought to eliminate, *Garner* does not clearly establish their alleged conduct violated Davenport's constitutional rights.

The Supreme Court has never addressed the rights of a passenger involved in a dangerous vehicular pursuit. And while, in the absence of applicable Supreme Court precedent, we may consider "a robust consensus of cases of persuasive authority," *al-Kidd*, 563 U.S. at 742 (internal quotation marks omitted), Davenport cites no precedent from this Circuit, or any other, that is on point. Given this near absence of cases, we cannot conclude that Schweitzer, Matakovich, and Kennedy acted in a plainly incompetent manner when they attempted to address the serious threat of immediate harm to others posed by Burris's flight. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the

14

law." (internal quotation marks omitted)).

*    *    *

For the reasons stated, the judgment of the District Court will be reversed in part and the case remanded with instructions to enter summary judgment on the basis of qualified immunity in favor of Schweitzer, Matakovich, and Kennedy. The appeal will be dismissed in part for lack of jurisdiction with respect to Gorecki.