NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 22-1688

———————————

CALISIA KELLEY; JOHNNIE MAE KELLEY, Co-Administrators of the Estate of
Bruce Kelley Jr., deceased,
Appellants

v.

BRIAN O'MALLEY, both in his Official and Individual Capacities as Sergeant for the
Allegheny County Port Authority; DOMINIC RIVOTTI, both in his Official and
Individual Capacities as Officer for the Allegheny County Port Authority

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-01599)
District Judge: Honorable Nora Barry Fischer

———————————

Argued
October 4, 2023

Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges*.

(Opinion filed: December 22, 2023)

Adam Bishop
Bishop Law
Suite 301
220 Grant Street
Pittsburgh, PA 15219

Noah Geary **[ARGUED]**
123 Washington Street
Washington, PA 15301
    *Counsel for Appellants Calisia Kelley and Johnnie Mae Kelley*

Gregory A. Evashavik **[ARGUED]**
Nicholas J. Evashavik
Evashavik Law
310 Grant Street
Suite 2901
Pittsburgh, PA 15219
    *Counsel for Appellees Brian O'Malley and Dominic Rivotti*

---

OPINION[*]

---

MATEY, *Circuit Judge.*

After Bruce Kelley, Jr. was fatally shot by police officers, Plaintiffs, the co-administrators of Kelley's estate, sued Officers Brian O'Malley and Dominic Rivotti. The District Court held the Officers were entitled to qualified immunity and granted summary judgment in their favor. Seeing no error in the District Court's decision, we will affirm.

I.

On the afternoon of January 31, 2016, two Allegheny County Port Authority police officers came across Kelley and his father sitting in a gazebo surrounded by open beer cans. The officers approached the gazebo, calling out to the men without response. Kelley then tried to push past one of the officers and flee. When one officer tried to restrain Kelley, Kelley resisted, and a struggle ensued. During the tussle, Kelley injured the second officer, causing "possibly a mild concussion." App. 6.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

Then Kelley pulled a knife with "a single, foldable blade, which was several inches long." App. 6. The officers radioed for assistance as Kelley left the gazebo. Backup soon arrived, and the officers began following Kelley. They repeatedly asked Kelley "to stop walking, drop the knife, and surrender." App. 7. Kelley refused, responded with profanity, and kept walking.

Officers tried several times to apprehend and disarm Kelley. First, they discharged pepper spray. But Kelley proved unphased by each of three attempts. Then officers tried tasing Kelley—twice. That too proved useless. Next, one of the officers tried to "sneak up" behind Kelley to strike Kelley's arm and dislodge the knife. App. 7. But Kelley turned and "pointed his knife at" the officer. App. 7. The standoff continued for another twenty minutes, while Kelley walked down the streets of suburban Pittsburgh with knife in hand.

Then Kelley encountered Officer Brian O'Malley and his K-9 German Shepherd, Aren. O'Malley and Aren tucked themselves near a bush as they waited to intercept Kelley. When another officer shouted, "We're going to send the police dog," Kelley replied that he would "kill that fucking dog" and "thrash[ed] the knife around." App. 9. O'Malley then moved away from the bush and yelled to Kelley, "Police K-9. Stop." App. 9. Kelley did not stop, and O'Malley commanded Aren to apprehend Kelley. Aren engaged, biting Kelley in his left arm. Kelley, still wielding his knife, "stabb[ed] Aren several times." App. 10. After dropping to the ground, Aren attempted to re-engage. Kelley responded by stabbing Aren several more times, "thrashing" his knife upwards into Aren's jaw. App. 10. Aren later died from the attack.

The parties dispute what happened next. The District Court found that Kelley "stepped towards" O'Malley "with the knife" in hand, a finding Appellants dispute. App. 10. But all agree that O'Malley then unholstered his weapon and fired several rounds. Officer Dominic Rivotti, who had joined the pursuit of Kelley mid-chase, did the same. When the shooting occurred, Kelley was standing about eight feet away from O'Malley and roughly 20 feet away from Rivotti. Eleven shots were fired between O'Malley and Rivotti's handguns. Seven entered Kelley, who later died from the wounds.

Calisia Kelley and Johnnie Mae Kelley, the co-administrators of Kelley's estate, sued Officer O'Malley and Officer Rivotti under 42 U.S.C. § 1983 claiming the Officers violated Kelley's Fourth Amendment right to be free from excessive force.[1] Following discovery, the District Court granted summary judgment for the Officers, finding no material factual disputes and holding the Officers' actions did not violate clearly established law. *See Kelley v. O'Malley*, No. 2:17-cv-01599, 2022 WL 1287820 (W.D. Pa. Mar. 18, 2022).[2]

---

[1] The District Court originally dismissed the complaint, concluding that the Officers' actions were objectively reasonable. *See Kelley v. O'Malley*, 328 F. Supp. 3d 447 (W.D. Pa. 2018). A panel of this Court reversed. *See Kelley v. O'Malley*, 787 F. App'x 102 (3d Cir. 2019). Accepting the facts pled as true, and drawing all reasonable inferences in Plaintiffs' favor, the panel held the complaint survived the motion to dismiss. *Id.* at 106. But the panel "express[ed] no view on the question of whether the officers' actions violated Kelley, Jr.'s Fourth Amendment rights under clearly established federal law at the time of the shooting." *Id.* at 107 n.7.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review, *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011), and will affirm "if [Appellees] show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## II.

Section 1983 provides that "[e]very person who," under color of law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). But the Supreme Court has long held that a state actor may avoid § 1983 liability under the doctrine of qualified immunity, an affirmative defense shielding officers "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity turns on two considerations. "First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "And second, the court must determine 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Spady*, 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. That discretion is particularly appropriate "where a case is most easily resolved by addressing whether the right was clearly established at the time of the alleged violation." *Spady*, 800 F.3d at 638. We follow that path and hold the Officers' actions were not prohibited by clearly established law.

5

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). That way the "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauley*, 580 U.S. 73, 79 (2017) (per curiam)). To determine whether a right is clearly established, we first state the right at the appropriate level of generality, and then determine whether the right was clearly established at the time the events occurred.

When framing the constitutional right at issue, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Rather, we must frame the right at issue with "a high 'degree of specificity,'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)), accounting for both the "specific facts at issue," *Kisela*, 138 S. Ct. at 1153, and the "specific context" facing the officers, *Spady*, 800 F.3d at 638. Specificity is "particularly important in excessive force cases," *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam), because "it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts," *Kisela*, 138 S. Ct. at 1152 (quoting *Mullenix*, 577 U.S. at 12).

6

Applying those considerations, the appropriate framing here is the right to be free from being shot by police officers after refusing their commands, killing their K-9 with a knife, and being within eight feet of a nearby officer with knife still in hand after previously injuring a police officer, fending off several non-lethal attempts at capture, and pointing a knife at an approaching officer.[3] That accounts for the "specific facts" and

---

[3] Judge Shwartz agrees that the events preceding the use of deadly force may be considered but, if Kelley did not pose an immediate threat to Defendants in the moments before he was shot, then the earlier events would not automatically render their use of deadly force reasonable. *See City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (holding no violation of any clearly established law where officers shot a suspect who raised a hammer above his head as if he were going to throw it or charge at the officers); *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 612–13 (2015) (holding deadly force was reasonable where a woman came at officers with a knife until she was feet away and where one of the officers was cornered); *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006) ("It [is clearly] established that where an officer ha[s] reason to believe that a suspect [i]s only holding a knife, not a gun, and the suspect [i]s not charging the officer and ha[s] made no slicing or stabbing motions toward him, that it [i]s unreasonable for the officer to use deadly force against the suspect." (citing *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 735–36 (10th Cir. 1993)); *see also Van Bui v. City & Cnty. of San Francisco*, 699 F. App'x 614, 616 (9th Cir. 2017) (Mem.) ("It was clearly established as of December 2010 that officers may not kill suspects who do not pose an immediate threat to their safety or the safety of others simply because they are armed, including in some circumstances in which the suspect has committed a violent crime in the immediate past." (internal quotation marks omitted) (quoting *Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997)); *Harris v. Serpas*, 745 F.3d 767, 773 (5th Cir. 2014) (holding deadly force reasonable where the decedent, who had just been tased, raised a knife above his head and refused officers' commands to drop the knife); *Reyes v. Bridgwater*, 362 F. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.").

To Judge Shwartz, there is a dispute as to whether Kelly made threatening gestures toward the Officers but what makes this case unusual is that the Officers knew that Kelley had pointed his knife at other officers minutes earlier at a different location, refused the Officers' commands to drop the knife when they confronted him, and, in the Officers' presence, violently stabbed a police dog immediately before Officers shot him. Although our Court has said that Kelley's stabbing of the dog "alone d[id] not show he

circumstances facing the Officers, as well as the moments preceding the use of force that would have informed any reasonable officer's assessment of whether there was probable cause to believe that Kelley posed a risk of causing serious bodily harm. *See Kisela*, 138 S. Ct. at 1153; *James v. New Jersey State Police*, 957 F.3d 165, 172 (3d Cir. 2020); *Abraham v. Raso*, 183 F.3d 279, 291–92 (3d Cir. 1999).[4]

Next, we turn to whether "the violative nature of particular conduct was clearly established." *James*, 957 F.3d at 169 (cleaned up) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017)). Appellants "may satisfy this standard by 'identify[ing] a case where an officer acting under similar circumstances as [Appellees] [were] held to have violated'" the Fourth Amendment. *Id.* at 169–70 (quoting *White*, 580 U.S. at 79). "For qualified-immunity purposes, clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive

---

posed a threat to the life and safety of the officers or other people," *Kelley*, 787 F. App'x at 105, and that is law of the case, the panel also stated that it expressed no view on whether Defendants' action violated Kelley's clearly established Fourth Amendment right, *id.* at 107 n.7. Judge Shwartz agrees with the majority, *see infra* n.4, that at the time of the events here the law was not clearly established that an individual has the right to be free from the use of deadly force when that individual held a knife near officers, refused commands to drop the knife, and violently stabbed a police dog who was trying to apprehend him because a reasonable police officer at that time could view all of that conduct as indicating that the individual "posed a threat of serious harm to the officers." *Birkeland v. Jorgensen*, 971 F.3d 787, 791–92 (8th Cir. 2020). For this reason, Judge Shwartz concurs in the judgment to affirm.

[4] Even if we framed the right in a way that was more favorable to Appellants— say, by limiting the right to the moments immediately preceding the use of force—the outcome remains the same. There was no clearly established right to be free from being shot by police officers after refusing their commands, killing their K-9 with a knife, and being within eight feet of a nearby officer with knife still in hand. *See, e.g.*, *Birkeland*, 971 F.3d at 791–92.

8

authority in the Courts of Appeals." *Id.* (internal quotation marks omitted) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 577 U.S. at 13).

Appellants do not point to a single case from any court clearly establishing the right at issue,[5] a point Appellants repeatedly conceded at oral argument.[6] Instead, Appellants assert this is an "obvious" case of unconstitutional conduct under the general excessive force standards in *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989). *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (announcing the "obvious case" exception to the specificity requirement). It is not, and Appellants' sole reliance on *Russell v. Richardson*, 905 F.3d 239 (3d Cir. 2018), is misplaced.

---

[5] To the contrary, the Supreme Court, this Court, and other courts hold there is no clearly established right against the use of deadly force where a victim brandishes a lethal weapon, defies commands to surrender, and the officer has probable cause to believe a person is in imminent danger. *See, e.g.*, *Kisela*, 138 S. Ct. at 1153; *City of Tahlequah*, 595 U.S. at 10–14; *James*, 957 F.3d at 168, 170–73; *Harris*, 745 F.3d at 772–73.

[6] *See* Oral Arg. at 05:06–05:14 ("This [is] an obvious case, and we don't need to get into looking at other cases[.]"), www2.ca3.uscourts.gov/oralargument/audio/22-1688_Kelleyv.O'Malley.mp3; Oral Arg. at 15:45–16:10 (same); Oral Arg. at 22:20–22:40 ("[Q:] Am I understanding your argument on the clearly established law that this is a case of obviousness, and therefore, you don't need to point to a specific case that would have given the officers notice in 2016. Is that your argument? [A:] Correct, it's an obvious case."); *see also* Opening Br. 69–70.

*Russell* was an "obvious case" of unconstitutional conduct because the officers there shot and paralyzed a minor who posed "no 'serious threat of immediate harm to others.'" 905 F.3d at 252 (quoting *Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017)). The minor "was relaxing, in his underwear, and unarmed" when law enforcement arrived to bring him before a judge. *Id.* (internal quotation marks omitted). Kelley, by contrast, was a 6'2" man weighing 213 pounds who physically harmed an officer, refused repeated commands to comply, brushed off pepper spray and taser darts, stabbed a police K-9 to death, and was within eight feet of a nearby officer while brandishing a knife—a knife he'd previously pointed at another officer. "This is far from an obvious case in which any competent officer would have known that shooting [Kelley] to protect [O'Malley] would violate the Fourth Amendment." *Kisela*, 138 S. Ct. at 1153.

\* \* \*

For these reasons, we will affirm the District Court's order granting summary judgment for Appellees.